

FILED
OCT 3 1 2008

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | \* | CR. 07-40055-06, -12, -15 |
| Plaintiff, | \* | MEMORANDUM OPINION |
| | \* | AND ORDER RE: MOTIONS |
| - vs - | \* | FOR NEW TRIAL |
| JOHN STANFORD; | \* | |
| FRANK BAKER; and | \* | |
| BRANYON DALE PIPPENGER, | \* | |
| a/k/a "Bam Bam," | \* | |
| Defendants | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

A motions and evidentiary hearing was held before the Court on September 8, 2008, and continued to October 28, 2008, to consider a number of motions, including the Defendants' motions for new trial. A trial transcript was ordered after the September 8, 2008, hearing and was available for the Court and parties prior to the continued hearing on October 28, 2008. The Court has had the opportunity to hear the testimony, examine the exhibits and review the relevant portions of the trial testimony.

Defendants Stanford, Baker and Pippenger were convicted on June 5, 2008, of conspiracy to possess with intent to distribute or to distribute 50 grams or more of a mixture or substance containing cocaine base. These Defendants filed their motions for new trial after receiving information that a trial witness for the Government, Michelle Blankenship, had given law enforcement inaccurate information in 2007 about another individual being present for a drug transaction. At the October 28, 2008, hearing Agent Stephan of the South Dakota Division of Criminal Investigation and a member of the South Dakota Drug Task Force which was involved in the investigation of the Defendants' case, testified that Blankenship had advised him that Cornell Butler was involved with her in an October 31, 2007, incident in which Blankenship sold bunk to a confidential informant. Agent Stephan verified with the South Dakota Penitentiary that Butler had been incarcerated on and a few days before October 31, 2007. On October 22, 2007, Blankenship and Butler had sold powdered cocaine to a confidential informant. During a recorded telephone conversation on October 22, 2007, between Blankenship and the confidential informant, Blankenship discussed having access to and wanting to sell a 9 mm

semiautomatic weapon. Agent Stephan testified that after the October 2007 incidents Blankenship participated in controlled buys in return for not being prosecuted.

The information about these October 2007 incidents involving Blankenship was not provided to Defendants before their May 2008 trial. Agent Stephan's investigative report regarding the October 22, 2007 incident was first provided to the defense and counsel for the Government during the October 28, 2008 hearing on the motions for new trial. This investigative report and Agent Stephan's testimony reveal that Agent Harvison of the federal Drug Enforcement Agency, a member of the South Dakota Drug Task Force, attended a briefing with other Drug Task Force members on October 22, 2007, before the Blankenship incident. After the briefing, Agent Harvison and others conducted pre-surveillance. Agent Harvison also had computer access to the Investigative Report that was filed as a result of the Blankenship October 22, 2007 incident. Counsel for the Government conceded during the October 28, 2008 hearing that the investigative report regarding the October 22, 2007 incident constituted material that should have been provided to the defense and would have been provided to the defense if Counsel for the Government had known of its existence.

Michelle Blankenship testified at trial that in June of 2007 she had participated in a controlled buy involving Defendant Frank Baker and another controlled buy involving Defendant John Stanford. Blankenship testified at trial that she contacted law enforcement and offered to set up the controlled buy. She testified, "I wouldn't have cared whether I got paid or not, but it helped me out. I am a single mother, so it was a bonus, but I wasn't doing it just because of the money, I was doing it because I know what it's done to my life." She further testified that for a time before she volunteered to set up the controlled buys, she had used then stopped using crack cocaine. She then volunteered for the controlled buys because she had to "get some of the drugs off the street because it ruins people's lives." Blankenship testified that she had been convicted of receiving stolen goods from an ex-fiancé in 1999, and had been convicted of DUI and a misdemeanor check charge. Blankenship testified that after her involvement in the controlled buys involving Stanford and Baker she had been charged with a controlled substance offense because she had medication in the wrong container. She explained, "All I had to do was prove that it was a prescription that was mine, and they dismissed it." When asked by the prosecution if she was working off charges prior to the controlled buys, Blankenship testified, "I didn't work off charges." Blankenship never testified regarding her involvement in the October 22, and 31, 2007, drug transactions and her subsequent involvement in controlled buys to work off the potential charges arising from these incidents.

2

The suppression by the prosecution of evidence favorable to an accused violates due process if the evidence is material either to guilt or to punishment, and irrespective of the good faith or bad faith of the prosecution.[1] *Brady v. Maryland*, 373 U.S. 83 (1963). The *Brady* rule requires prosecutors to disclose evidence favorable to the accused if the suppression of the evidence would deprive the accused of a fair trial. Impeachment as well as exculpatory evidence falls within this rule. *United States v. Bagley*, 473 U.S. 667, 676 (1985). Regardless of whether a request has been made for it, favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."473 U.S. at 682. "A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)(quoting *Bagley*, 473 U.S. at 678). Once constitutional error is found under *Brady* there is no need for further harmless-error review. In determining materiality, suppressed evidence is "considered collectively, not item by item." *Kyles v. Whitley*, 514 U.S. at 435-36.

The information regarding Blankenship's 2007 drug dealings and inaccuracy in reporting Cornell Butler's involvement in the October 31, 2007, incident is material impeachment evidence and the suppression of this evidence violates the Defendant's due process rights under *Brady*. Although Blankenship's testimony may have fallen short of constituting perjury, her testimony was seriously misleading. Blankenship presented as a much better witness in terms of appearance, intelligence, motive and criminal background than most of the Government's witnesses in this case.

Although there was other incriminating evidence against Defendants Baker and Stanford, there is a reasonable probability that the suppressed impeachment evidence would have put the case in a different light. Although Blankenship did not testify regarding Defendant Pippenger, the Court concludes that her misleading testimony bolstered the integrity of the entire conspiracy investigation and there was a spillover effect which likewise prejudiced Defendant Pippenger[2]. When the Court views

---

[1] The prosecution remains responsible to disclose favorable evidence to the defense regardless of whether law enforcement investigators fail to inform the prosecutor of the evidence. *See Kyles v. Whitley*,514 U.S. 419, 437 (1995).The prosecution represented to the Court that this was an unintentional suppression of evidence by the U.S. Attorney's office. The Court accepts that representation.

[2] The Court notes that the evidence against Defendant Pippenger at trial was not as strong as the evidence against Defendants Baker and Stanford. The Court also notes that codefendant

3

the entirety of the evidence the Court concludes that the suppression of this impeachment evidence "undermines confidence in the outcome of the trial." For the reasons set forth in this memorandum opinion as well as those set forth at the close of the October 28, 2008 hearing, all of the Defendants' motions for new trial are granted.

Defendant Pippenger filed a pro se motion to appoint new counsel on September 16, 2008, (Doc. 1240) and counsel for Defendant Pippeneger filed a Second Motion to Withdraw (Doc. 1247).The Court denied these motions at the October 28, 2008 hearing. The same motion was made by Defendant Pippenger before the last hearing and then withdrawn. Attorney Epp was fully familiar with this case and adequately represented Defendant Pippenger at the new trial motion hearings. However, in view of counsel's request and the request by Defendant Pippenger, the motion of Attorney Epp to withdraw is granted and new counsel will be appointed for Defendant Pippenger.

Accordingly,

IT IS ORDERED:

1. That the motions for new trial submitted by Defendants Stanford, Baker and Pippenger (Doc.1155, 1158, 1196, 1203) are granted and a new scheduling order will be issued; and
2. That Defendant Pippenger's pro se motion to appoint new counsel(Doc. 1240) and counsel for Defendant Pippeneger's Second Motion to Withdraw (Doc. 1247)are granted.

Dated this 31st day of October, 2008.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY:_____
    (SEAL)    DEPUTY

---

Olimedji Ayodele was acquitted at trial. Blankenship did not implicate Olimedji Ayodele in her trial testimony but instead helped him by an inference that the 13 ounces of drugs found in a house owned by the mother of the Ayodele brothers in Sioux City, Iowa, were those of "Black," Olimedji Ayodele's brother.

4